363 S.E.2d 719

**STATE of West Virginia**

v.

**Bruce HALLER.**

**No. 17492.**

Supreme Court of Appeals of
West Virginia.

Nov. 17, 1987.

Charles G. Brown, Atty. Gen., Jill Miles, Asst. Atty. Gen., Charleston, W.Va., for the State.

Brent E. Beveridge, Fusco & Newbraugh, Morgantown, for Haller.

NEELY, Justice:

On 6 August 1985, appellant, Bruce Haller, went to the residence of Marc Carpenter to discuss the sale of a 1968 Pontiac GTO automobile. Mr. Carpenter wanted to sell the car to Mr. Haller for $1,000. Mr. Haller offered to trade what he represented to be cocaine for the car. Mr. Carpenter tested the cocaine by injecting it into his arm and said it wasn't "coke." Later the same day, Mr. Carpenter and Mr. Haller, along with Billy Westfall and Jim Wolfe, met in a parked car near a skating rink. Once again, Mr. Carpenter injected the co-caine, and this time believed that the substance was cocaine. Based on the representations by Mr. Haller and by injecting the cocaine, Mr. Carpenter agreed to accept cocaine in exchange for the title to his car.

The four men then went to Mr. Carpenter's residence to complete the exchange. Mr. Carpenter gave Mr. Haller the executed car title and Mr. Haller had the car towed from the Carpenter residence. At some time between the skating rink and Mr. Carpenter's house, someone switched the cocaine for an imitation substance. When Mr. Carpenter later tried this substitute substance, he discovered it wasn't cocaine and believed that Bruce Haller had tricked him. Outraged, he then called the police!

The police advised Mr. Carpenter to go to a magistrate and swear out a warrant. Dumbfounded by the situation, Magistrate Ron Crislip requested that the principals in the trade and the state police come down to his office. When the state police arrived, Bruce Haller, Marc Carpenter and Billy Westfall were already there.

After being read his *Miranda* rights, Bruce Haller signed a statement that substantially corroborated the statements of Marc Carpenter and Billy Westfall. Mr. Haller admitted that he had purchased Mr. Carpenter's car for a quantity of a substance *he believed* to be cocaine. However, Mr. Haller stated that he *did not* replace the cocaine with a substitute. He believed that Mr. Carpenter or Mr. Westfall probably made the switch in an attempt to defraud him of the title to the car. Mr. Haller was indicted by the Marion County grand jury in November, 1985 on a three count indictment. The first count charged him with feloniously delivering a controlled substance. The second count charged him with receiving property valued at more than $200 under false pretenses, and a third misdemeanor count charged him with delivering an imitation controlled substance.

A suppression hearing was held on 4 February 1986 concerning the admissibility of Mr. Haller's statement while in the magistrate's office. The court found that Mr.

Haller had been given a *Miranda* warning advising him of his rights before he gave any statement and, therefore, his statement was admissible. At trial, Marc Carpenter and Billy Westfall testified about the trade and identified Bruce Haller's substance as cocaine based on their own past experience with the drug. Each testified to its numbing effect and white crystal form. The state troopers, Mr. Finkenbinder and Mr. Jackson, who questioned all the principals to the trade, testified about the content of Bruce Haller's oral custodial statement. Mr. Haller's written statement was then read to the jury. The jury convicted Mr. Haller of delivery of a controlled substance and found the defendant not guilty on the obtaining property under false pretenses count and delivery of a counterfeit substance count.

Mr. Haller now asserts on appeal that the trial court erred in refusing to grant his motion for a directed verdict on count one of the indictment as the State failed to meet its burden of proof that a controlled substance was delivered. We disagree and affirm the trial court's ruling.

## I

The appellant argues that the evidence against him is insufficient to warrant a conviction because there was no competent proof that the substance delivered was cocaine. Therefore, appellant urges, the trial court should have granted his motion for a directed verdict at the close of the state's case. The state's case against Mr. Haller consisted of two items of evidence: (1) the signed custodial confession Mr. Haller gave to Trooper Finkenbinder asserting that *he had delivered cocaine* to Marc Carpenter; and (2) the testimony of Mr. Carpenter and Mr. Westfall that Mr. Haller gave them cocaine, which they sampled, in exchange for the title to Mr. Carpenter's car.

"It is the mandatory duty of a trial court, whether requested or not, to hear the evidence and determine in the first instance, out of the presence of the jury, the voluntariness of an oral or written confession by an accused person prior to admitting the same into evidence." Syllabus Point 1,

*State v. Fortner*, 150 W.Va. 571, 148 S.E.2d 669 (1966), overruled in part, *State ex rel. White v. Mohn*, 168 W.Va. 211, 283 S.E.2d 914 (1981); *see also, Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). During the hearing, "part of the State's burden is to prove that the defendant prior to the giving of a confession was given the rights constitutionally mandated in *Miranda v. Arizona.*" *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261, 266 (1982). The focus of the hearing, however, is not merely on whether the arresting officer properly informed the accused of his rights. Rather, "the voluntariness of a confession is an inquiry that must be gauged by the totality of the circumstances under which it was given including the background, experience and conduct of the accused." *Persinger* at 286 S.E.2d at 267. *See also, Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

The state's burden of proof in showing that an accused voluntarily made statements or confessions, with full knowledge and comprehension of his *Miranda* rights, has been clearly stated in prior cases. "The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of part or all of an offense were voluntary before such may be admitted into the evidence of a criminal case." Syl. Pt. 5, *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975); Syl. Pt. 1, *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978).

In this case, the record indicates that only three persons testified during the suppression hearing—the two police officers who took Mr. Hallers' oral and written confessions, and Mr. Haller. Trooper Finkenbinder testified that he advised Mr. Haller of his *Miranda* rights and that Mr. Haller said he understood them. He then asked Mr. Haller to tell his side of the story, which Mr. Haller proceeded to do. Afterwards, Trooper Finkenbinder asked Trooper Jackson to take Mr. Haller's written statement. Trooper Jackson testified that Mr. Haller said Trooper Finkenbinder

advised Mr. Haller of his rights and that Mr. Haller understood them. Mr. Haller then testified that he was under the influence of valium and was not aware that his statement could be used against him. At the end of the hearing, the trial court found that Mr. Haller had been given a *Miranda* warning advising him of his rights before he gave any statement and, therefore, his statement was admissible at trial. We find no error in this ruling and hold the statement was admissible. "A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence." Syl. Pt. 3, *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978).

## II

The other evidence offered in the State's case against Mr. Haller was the lay testimony of Mr. Carpenter and Mr. Westfall that Mr. Haller gave them cocaine, which they sampled, in exchange for the title to Mr. Carpenter's car. Appellant asserts that Mr. Carpenter and Mr. Westfall lacked the specific competency to qualify as lay witnesses capable of identifying cocaine under Rules 701 and 702, *W.Va. Rules of Evidence*.[1] In the only other West Virginia case that parallels this set of facts, *State v. Frazier*, 162 W.Va. 602, 252 S.E.2d 39, 50 (1979) we held that the lay opinion of the prosecuting witness *alone* was not sufficient to prove the identity of the substance in question. "As a general rule, a person who possesses no special expertise is not qualified to give an opinion in a drug-related case that the substance in question is a prohibited substance." 162 W.Va. at 621, 252 S.E.2d at 50.

The appellant would liken the facts of his case to those in *State v. Frazier, supra*. The *Frazier* witness was not asked if he had any detailed knowledge of the physical appearance of marijuana or if he had examined the substance that was allegedly in the cigarette to see if it resembled marijuana. In *Frazier*, the witness's testimony was that he had smoked a cigarette and, in his opinion, it was marijuana. There was a complete absence of any foundation that would support the conclusion that the witness possessed a special familiarity with the substance to support the reliability of his opinion. Therefore, we held in *Frazier* that the lay witness testimony concerning the marijuana was inadmissible. At that time, our holding was the majority rule regarding lay witness testimony on the identity of a controlled substance.[2] However, at the time of *Frazier* we had not yet adopted the *W.Va. Rules of Evidence*.[3]

Since our adoption of the *W.Va. Rules of Evidence*, which closely parallel the *Federal Rules of Evidence*, many federal courts have allowed certain lay witnesses to testify about the identity of a drug. In one line of cases, the prosecution was allowed to qualify a witness as an expert under Rule 702 based on his prior knowledge and extensive use of the drug in question. *U.S. v. Sanchez*, 722 F.2d 1501, 1506 (11th Cir. 1984) cert. denied, 467 U.S. 1208, 104 S.Ct.

---

1. Rule 701, *W.Va. Rules of Evidence* provides: "*Rule 701. Opinion Testimony by Lay Witnesses.* If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue."
   Rule 702, *W.Va. Rules of Evidence* provides: "*Rule 702. Testimony by Experts.* "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

2. *See e.g., People v. McLean*, 56 Cal.2d 660, 16 Cal.Rptr. 347, 348–349, 365 P.2d 403, 404–405 (1961) cert. denied, 370 U.S. 958, 82 S.Ct. 1613, 8 L.Ed.2d 824 (1962); *Scopolites v. State*, 50 Ala. App. 115, 117, 277 So.2d 389, 391 (1973), cert. denied, 291 Ala. 797, 277 So.2d 395 cert. denied, 414 U.S. 977, 94 S.Ct. 299, 38 L.Ed.2d 221 (1973); *Slettvet v. State*, 258 Ind. 312, 280 N.E.2d 806 (1972); *People v. Kenny*, 30 N.Y.2d 154, 331 N.Y.S.2d 392, 282 N.E.2d 295 (1972); *State v. Maupin*, 42 Ohio St.2d 473, 330 N.E.2d 708, 712–713 (1975), Annot., 75 A.L.R.3d 717 (1977).

3. The West Virginia Supreme Court of Appeals adopted the *W.Va. Rules of Evidence* on 18 December 1984, to be effective 1 February 1985.

2396, 81 L.Ed.2d 353 (1984); *United States v. Crisp,* 563 F.2d 1242, 1244 (5th Cir.1977); *United States v. Quesada,* 512 F.2d 1043, 1045 (5th Cir.) cert. denied, 423 U.S. 946, 96 S.Ct. 356, 46 L.Ed.2d 277 (1975); *Ewing v. U.S.,* 386 F.2d 10 (9th Cir.), cert. denied, 390 U.S. 991, 88 S.Ct. 1192, 19 L.Ed.2d 1299 (1967); *U.S. v. Osgood,* 794 F.2d 1087 (5th Cir.) cert. denied, 479 U.S. 994, 107 S.Ct. 596, 93 L.Ed.2d 596 (1986); *People v. Jewsbury,* 115 App.Div.2d 341, 496 N.Y.S.2d 164 (1985). *See* annotation 95 A.L.R.3d 978. These witnesses usually are either drug users offering immunized testimony or undercover police officers. Therefore, their special familiarity with the illicit substance qualifies them to offer expert testimony.[4]

Another line of federal cases, based on the permissive scope of the trial court's discretion under Rule 701, *Federal Rules of Evidence,* has held that the testimony of a lay witness is sufficient to support a conviction on the identity of the substance involved when considered in conjunction with objective factors and evidence of other witnesses in the case:

> "A person who is familiar with the drug in issue and its physical or chemical properties is permitted to give an opinion of the identity of the drug, whether the familiarity arises from formal or informal training and experience ... Generally, expert testimony is unnecessary to establish the nature of an alleged controlled substance."

Cleckly, *Handbook on Evidence for West Virginia Lawyers,* (2d Ed.1985). *United States v. Fince,* 670 F.2d 1356 (4th Cir. 1982), cert. denied 456 U.S. 982, 102 S.Ct. 2254, 72 L.Ed.2d 860 (1982). *United States v. Atkins,* 473 F.2d 308 (8th Cir.1973) cert.

denied 412 U.S. 931, 93 S.Ct. 2751, 37 L.Ed.2d 160 (1973). *United States v. Arrasmith,* 557 F.2d 1093, 1094 (5th Cir.1977), S. Saltzburg and K. Redden, *Federal Rules of Evidence Manual* (4th Ed., 1986) at 624, M. McCormick, *Handbook on Evidence,* 511 (3d Ed.1984).

For example, in *United States v. Sweeney,* 688 F.2d 1131 (7th Cir.1982), the court held that "a witness is qualified to testify as to the identity of a drug based on his prior use and knowledge of that drug and his sampling of the substance which he identified, coupled with his statement that the drug about which he is testifying affected him in the same manner as the drug he had previously ingested." 688 F.2d at 1145. Accordingly, the court in *Sweeney* held that when the prosecution established an adequate foundation that lay witnesses had prior knowledge of drugs that qualified them to identify the substance used, the lay witness testimony that defendant had manufactured PCP was deemed admissible. 688 F.2d at 1145. This interpretation of Rule 701 of the *Federal Rules of Evidence* allows broad trial court discretion in admitting lay witness testimony. If a witness can demonstrate a knowledge of the controlled substance to the trial court's satisfaction, the witness is competent to testify and the weight to be given the testimony is left for the jury to determine.

The Fourth Circuit has adopted this position on lay opinion evidence and has consistently held that lay witness testimony and circumstantial evidence may be sufficient without the introduction of an expert chemical analysis to establish the identity of a substance involved in an alleged nar-

---

**4.** In *United States v. Harrell,* 737 F.2d 971, 978 (11th Cir.1984) cert. denied, 470 U.S. 1027, 105 S.Ct. 1392, 84 L.Ed.2d 781 (1985), the U.S. Court of Appeals held that a witness who testified about controlled substances does not even have to use the drug on the occasion in question as long as the witness can prove familiarity based on prior use or sale:

> "Identification of a controlled substance does not require direct evidence if available circumstantial evidence establishes its identity beyond a reasonable doubt. Such evidence can include lay experience based on familiarity through prior use; trading or law enforce-

ment; a high sales price; on the scene remarks by a conspirator identifying the substance as a drug; and behavior characteristics of sales and use such as testing, weighing, cutting and peculiar ingestion.... Identification based on past use coupled with present observation of the substance at hand will suffice to establish the illicit nature of a suspected substance."

This case appears to be the most liberal case on the subject of admitting lay opinion testimony. It remains to be seen whether other federal circuits will follow the 11th circuit's holding.

cotics transaction. *United States v. Scott*, 725 F.2d 43, 45 (4th Cir.1984); *United States v. Dolan*, 544 F.2d 1219, 1221 (4th Cir.1976); *United States v. Gregorio*, 497 F.2d 1253, 1263 (4th Cir.1974), cert. denied, 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974).

■ Although we have not had an opportunity since *Frazier, supra* to rule on lay testimony in a drug-related case, this Court has consistently held that a witness with superior knowledge may testify if his testimony is helpful to the jury. "It is firmly established in this state that the opinion of a witness who is not an expert may be given in evidence if he has some peculiar knowledge concerning the subject of the opinion than jurors are ordinarily expected to have." *Cochran v. Appalachian Power Co.*, 162 W.Va. 86, 246 S.E.2d 624 (1978); *Moore v. Shannondale, Inc.*, 152 W.Va. 549, 566, 165 S.E.2d 113, 124 (1968), citing Syl. pt. 4 *Overton v. Fields*, 145 W.Va. 797, 117 S.E.2d 598 (1960). Also, syllabus point 4 of *Cox v. Galigher Motor Sales Co.*, 158 W.Va. 685, 213 S.E.2d 475 (1975) asserts:

"The determination of whether a witness has sufficient knowledge of the material in question so as to be qualified to give his opinion is largely within the discretion of the trial court, and will not ordinarily be disturbed on appeal unless clearly erroneous."

Furthermore, our Rule 701 of the *West Virginia Rules of Evidence* is identical in language to its federal counterpart; therefore we see no reason not to follow clear federal authority in this case. Under the law now emerging from Rules 701 and 702 of the *Federal Rules of Evidence* lay witnesses may testify about controlled substances when their testimony is coupled with other objective factors and the prosecution lays a foundation showing special familiarity with the substance in question.

■ Applying the law discussed above to the facts of the present case, we do not see any abuse of the trial court's discretion in allowing the testimony of Marc Carpenter and Billy Westfall concerning the identity of the substance traded for the automobile. Both men testified to sampling the alleged cocaine by injecting it into their veins. Both Mr. Carpenter and Mr. Westfall testified that they had previously used cocaine extensively. Clearly, Mr. Carpenter's and Mr. Westfall's testimony concerning the identity of the cocaine was within the permissive scope of Rule 701, *West Virginia Rules of Evidence*. The trial court, in his discretion, found both witnesses competent to testify about their perceptions of the identity of the drug due to their earlier experiences with cocaine. Mr. Haller's attorney had ample opportunity to impeach the witnesses' credibility on cross-examination and the jury weighed their testimony against the other facts of the case. This testimony, coupled with Mr. Haller's statement that he delivered cocaine to Marc Carpenter, was enough to sustain a conviction on a delivery of a controlled substance. Accordingly, we affirm the trial court's ruling refusing defendant's motion for a directed verdict.

### III

■ Appellant last asserts that the trial court erred in refusing to grant appellant's motion for a mistrial when Trooper Finkenbinder testified about appellant's prior arrests. During the cross-examination of Trooper Finkenbinder, defense counsel attempted to establish that the appellant did not understand his *Miranda* rights because he was under the influence of drugs and, therefore, his subsequent confession was not voluntarily given. Trooper Finkenbinder testified that he believed Mr. Haller did understand his rights before he confessed. When defense counsel asked Trooper Finkenbinder how he was sure Mr. Haller understood his rights, the trooper testified that he had heard that Mr. Haller had been arrested before.[5]

5. The relevant testimony is the following:
Q. Wasn't it, in fact, the mere fact that Mr. Haller answered in the affirmative to your question "do you understand your rights" that led you to believe that, in fact he did understand his rights?
A. That was a large portion of the basis, yes, sir.

Contrary to appellant's assertions, Trooper Finkenbinder's comment was compelled by defense counsel's line of questioning. If any error did occur, it was invited. As we stated in Syl. Pt. 2 of *State v. Bowman,* 155 W.Va. 562, 184 S.E.2d 314 (1971):

> An appellant or plaintiff in error will not be permitted to complain of error in the admission of evidence which he offered or elicited, and this is true even of a defendant in a criminal case.[6]

Furthermore, immediately following Trooper Finkenbinder's comment, defense counsel objected and the court sustained the objection. The jury was immediately instructed to give Mr. Haller's alleged prior arrests no weight in arriving at their verdict. "Ordinarily where objections to questions or evidence by a party are sustained by the trial court during the trial and the jury instructed not to consider such matter, it will not constitute reversible error." Syl. Pt. 18, *State v. Hamric,* 151 W.Va. 1, 151 S.E.2d 252 (1966). Although there are situations where the introduction of evidence is so prejudicial that an instruction to disregard such evidence will be insufficient and a mistrial should be granted, this case was not one of those situations. *State v. Acord,* 175 W.Va. 611, 336 S.E.2d 741 (1985).

Therefore, for reasons stated above, we hold there was no trial court error in refusing to grant appellant's motion for a mistrial based on Trooper Finkenbinder's comment nor was there any error in allowing the lay testimony of Marc Carpenter and Billy Westfall on the identity of the cocaine.

Affirmed.

Q. Okay, was that the only thing you had to go on as his comprehension, that, and his physicial demeanor?
A. No, sir.
Q. Okay, What else?
A. I had heard—*I never personally arrested Mr. Haller before, but I had heard that he had been arrested before.* [The underscored language in-

dicates the testimony complained of by the appellant.]

6. *See also, State v. McWilliams,* 177 W.Va. 369, 352 S.E.2d 120 (1986); *State v. Harshbarger,* 170 W.Va. 401, 294 S.E.2d 254 (1982); *State v. McCormick,* 168 W.Va. 445, 290 S.E.2d 894 (1981); *State v. Bosley,* 159 W.Va. 67, 218 S.E.2d 894 (1975).