**Tom PETUSKEY, Court Clerk of Oklahoma County, Petitioner,**

v.

**The Honorable Richard FREEMAN, Judge of the District Court of Oklahoma County, Respondent.**

**No. 84531.**

Supreme Court of Oklahoma.

Feb. 14, 1995.

Robert H. Macy, Dist. Atty. and James B. Robertson, Asst. Dist. Atty., Oklahoma City, for petitioner.

Susan B. Loving, Atty. Gen. of Oklahoma and Andrew Tevington, Asst. Atty. Gen., Oklahoma City, for respondent.

LAVENDER, Justice.

This is an original proceeding where petitioner, Court Clerk of Oklahoma County, requests this Court to assume original jurisdiction and issue writs of mandamus and prohibition against the respondent, the Presiding Administrative Judge of Oklahoma–Canadian Counties. The dispute lies in the issuance of

two separate administrative orders issued by respondent that directly affect the operation and/or personnel of the Oklahoma County court clerk's office. In that the instant matter affects a vital relationship within the judicial service (that between the Court Clerk and Presiding Judge), in that one administrative order concerns the release of county prisoners and is, thus, imbued with an aspect of public safety, and the other administrative order concerns the proper procedure for disposition of funds in garnishment proceedings, we assume original jurisdiction and issue this opinion to settle the dispute between the two public officers involved. *See Petuskey v. Cannon*, 742 P.2d 1117, 1119 (Okla.1987) (original jurisdiction assumed in previous dispute between same Court Clerk and a predecessor Presiding Judge concerning authority over Court Clerks and their deputies).[1] We also issue a writ prohibiting enforcement of both administrative orders for the reasons set forth in this opinion.

■ In the first instance, we note that the presiding judge of a judicial administrative district in Oklahoma has statutory authority to adopt rules that are calculated to bring about a more speedy and efficient administration of justice within the district. 20 O.S. 1991, § 23(2); *Petuskey, supra*, 742 P.2d at 1120. However, when such rules are inconsistent with or contravene a statute the statute must prevail. *Oklahoma County Sheriff v. Hunter*, 615 P.2d 1007, 1008 (Okla.1980). Petitioner does not question the general authority of respondent to promulgate rules under § 23, but argues the orders involved here are inconsistent with certain statutes and, thus, must fall. With this in mind we turn to the individual administrative orders, which we construe as rules promulgated by respondent under the power conferred by § 23.

I

### ADMINISTRATIVE ORDER NO. 7–94–18

■ In August 1994, respondent issued an Administrative Order Requiring Execution of Orders of Release (AD7–94–18) which provides in pertinent part as follows:

NOW, on this first day of August, 1994, the Administrative Presiding Judge, being fully advised, finds that swift and efficient administration of justice requires an Order of Release be issued to the Sheriff of Oklahoma County immediately upon determination by the Court that such order is proper, and

It is Therefore, Ordered by the Court, as follows:

1. The Judge of any court in this Judicial District, or the Clerk of the Court acting at the verbal or written order of a judge, upon making a determination that a person in custody of the Oklahoma County Sheriff pursuant to criminal charges by the State of Oklahoma is entitled to be released therefrom, shall immediately execute an Order of Release and forthwith deliver the Order of Release to the Oklahoma County Sheriff who shall without undue delay release the person from custody according to the terms contained within the body of the Order of Release,

2. In addition to defendant's name, case number or numbers, Order of Release forms shall contain sufficient information to give the Sheriff unmistakable knowledge and direction as to the intended disposition of each count of each case.

3. In order to carry out the intention of this administrative order, the District Court Clerk shall provide each judge of the Court with a supply of unexecuted criminal Order of Release forms in the form as attached hereto marked "sample".

1. We also note in support of our decision to assume original jurisdiction that respondent informs us in an affidavit submitted with one of his submissions that other judicial districts in Oklahoma use the same or a very similar Order of Release form in regard to the release of prisoners than the one at issue in this case and sanctioned by one of the administrative orders in dispute. Such fact provides an additional reason for the assumption of jurisdiction because our pronouncement here will affect the manner in which multiple judicial districts deal with the release of prisoners. *See Petuskey v. Cannon*, 742 P.2d 1117, 1119 (Okla.1987) (one reason for assumption of original jurisdiction is widespread effect decision may have on authority of those involved in judicial service).

A portion of the forms supplied to the judges shall have the court seal already affixed so as to only require the signature of the judge or, at his or her order, that of the court clerk, in order to be effectuated; in the alternative, rather than furnishing a supply of forms with the court seal affixed, the clerk at his option may furnish the forms together with a court seal so that the forms may be sealed at the time of their execution in the courtroom.

4. At any time a good and sufficient bond is posted by or on behalf of a person in custody of the Sheriff of Oklahoma County pursuant to charges by the State of Oklahoma, and the bond is approved by a judge of this court or the District Court Clerk, the clerk of the court is herewith authorized and ordered to execute an Order of Release and to forthwith deliver the Order of Release to the Sheriff of Oklahoma County.

The sample Order of Release form attached to AD7–94–18 provides:

## ORDER OF RELEASE

In the District Court of the Seventh Judicial District of the State of Oklahoma sitting in and for Oklahoma County.

|  |  |
|---|---|
| THE STATE OF OKLAHOMA<br>vs. | )<br>)<br>)    ORDER OF RELEASE<br>)<br>)<br>) |

TO THE SHERIFF OF OKLAHOMA COUNTY:

WHEREAS, Upon the application of _____ in your custody, charged on an indictment pending in the District Court of Oklahoma County, with the commission of the crime of _____

I have admitted said Defendant to bail as required by law, and said bail having been given and approved;

IT IS ORDERED, That you, if said Defendant is in your custody for no other cause but this, immediately upon receipt of this order, release said Defendant from further custody.

Witness my hand this _____ day of _____, 19__

TOM PETUSKEY, Court Clerk

BOND AMOUNT $_____

By_____, Deputy.

---

As one can readily see from review of AD7–94–18 and the sample Order of Release form, the effect of AD7–94–18, and, in fact, its express directive, is to sanction the Court Clerk or his deputies signing orders of release, in lieu of the signature of a duly appointed judge. Even though AD7–94–18 indicates any determination to release a prisoner is made by a judge and the Court Clerk or his deputy only signs the Order of Release upon a verbal or written order of a judge, we believe a basic infirmity exists in AD7–94–18 which requires us to prohibit its enforcement.

Respondent has provided us with none, and we have been unable to find a statute, which sanctions the blanket authority of a Court Clerk to sign orders of release of county prisoners. Indeed, statutes exist which expressly provide that a judicial officer

is the one enjoined with this important duty. 22 O.S.1991, § 1105 provides:

> Upon the allowance of bail and the execution of the requisite recognizance, bond or undertaking, to the state, **the magistrate, judge or court, must, if the defendant is in custody, make and sign an order for his discharge,** upon the delivery of which to the proper officer the defendant must be discharged. (emphasis added)

22 O.S.1991, § 262 provides in pertinent part;

> After hearing the proofs and the statement of the defendant, if he have one, or his testimony if he testifies if it appear either that a public offense has not been committed, or that a public offense has been committed, but there is not sufficient cause to believe the defendant guilty thereof, **the magistrate must order the defendant to be discharged, by an endorsement on the complaint over his signature** .... (emphasis added)

In the case of *Whiteaker v. State,* 31 Okla. 65, 119 P. 1003, 1007 (1911), a case construing the predecessor statute to § 1105, we said:

> An oral order of release given by the magistrate to the officer who has charge of the prisoner is a sufficient compliance with the statute so far as the prisoner and his sureties are concerned, although it shows a neglect of the statutory formalities by the justice which is far from commendable. (emphasis added)

Although *Whiteaker* recognized that § 1105 concerning a signed order of release by a judge was only directory in nature and the lack of the judge's signature provided no relief to the prisoner or his surety in a case where the bail bond of the inmate was sought to be forfeited, the emphasized language from *Whiteaker* clearly indicates this Court's displeasure with the judge's failure to comply with the statutory dictates in regard to release of prisoners.[2]

The primary goal of statutory construction is to ascertain and follow the intention of the Legislature. *Ledbetter v. Alcoholic Beverage Laws Enforcement Commission,* 764 P.2d 172, 179 (Okla.1988). Where the language of a statute is plain and unambiguous and the meaning clear, the statute will be given the meaning expressed by that language. *TRW/Reda Pump v. Brewington,* 829 P.2d 15, 20 (Okla.1992). Here, §§ 262 and 1105 clearly and unambiguously reflect a legislative intent that it be a judge or magistrate that undertakes the responsibility of signing orders releasing prisoners. The administrative order, being inconsistent with this legislatively expressed intent accordingly must fail.

We also note in regard to AD7–94–18 that we must strike down and prohibit enforcement of the entire administrative order, including the part(s) concerning deputy court clerks supplying Orders of Release with the seal of the clerk of the district court pre-affixed thereto in the form of the sample attached to AD7–94–18.[3] We do so because, as we have set out above, the sample Order of Release form required to be supplied is invalid because it calls for the signature of the Court Clerk or a deputy, rather than a judge or magistrate, in contravention of Oklahoma statutes. Accordingly, we cannot sanction the use of such an Order of Release form.[4]

---

**2.** We also direct attention to a well-reasoned Oklahoma Attorney General opinion, Op. Atty. Gen. No. 80–1 (Nov. 14, 1980), which in answering questions concerning the authority of Sheriffs or attorneys to secure the release of a prisoner, or release by court minute, concludes that (with few minor statutory exceptions) a prisoner may only be released under authority of a signed court order. Further, as discussed in Op. Atty. Gen. No. 80–1, once bail is set or allowed by a judge, although a Court Clerk is among those public officers statutorily authorized to **take** bail under 22 O.S. 1991, § 1101, it is a judge that must sign the court order (either at the time of setting or allowing bail or at some later time) that has the effect of releasing the prisoner from custody.

**3.** 12 O.S. 1991, § 38 requires every clerk of a district court to keep a seal of the county to be used to authenticate documents and instruments required to be certified by the court or court clerk.

**4.** We also note that there is an obvious potential for grave harm by having a supply of blank release forms with the seal affixed thereto. *See Matter of Eplin,* 186 W.Va. 37, 410 S.E.2d 273 (1991) (potential for grave harm exists by failure of magistrate to personally sign only completed release or commitment forms).

■ We inform the parties, however, that by striking down the entire administrative order we are not implying that a judge, or a Presiding Judge by administrative rule, lacks the power to require a clerk to furnish necessary personnel to the judges of a district. The authority of the judges and Presiding Judge in such regard, and the corresponding duty of the clerk to comply, was made clear in *Petuskey, supra,* 742 P.2d at 1123. We also believe that the duty of the clerk to furnish necessary personnel includes the duty, upon request of a judge, to furnish deputy court clerks that are equipped with the tools and supplies required to carry out the orderly and efficient operation of the court. This duty, of course, includes the duty to assist the judges in filling out court documents or forms when necessary to the efficient administration of justice. With this final cautionary note, we hold a writ prohibiting enforcement of AD7–94–18 should issue.

## II

### ADMINISTRATIVE ORDER NO. 7–94–25

■ AD7–94–25 generally concerns the receipt and disbursal of garnishment funds by petitioner. It provides:

The Court Clerk of Oklahoma County is hereby ordered to disburse directly to the judgment creditor any garnishment payment(s) received, on all "SC," "CS" or "CJ" cases, within twenty-one (21) days from receipt, whether such garnishment is a continuing wage garnishment issued pursuant to 12 O.S.1991 § 1173.4(F), or whether such garnishment is a nonwage garnishment, issued pursuant to 12 O.S. § 1172.2 (amended by S.B. 1076, effective September 1, 1994).

When a garnishee fails to supply an answer with its garnishment payment, the Court Clerk is ordered to hold the payment(s) and notify the garnishee and judgment creditor by first class mail of the omission. Thereafter the Court Clerk shall disburse payment pursuant to order of the court.

It is further ordered that garnishment payments received by the Court Clerk of Oklahoma County shall be returned to the garnishee only upon order of the court unless the information pertaining to the payment is insufficient to allow the clerk to post the payment in the correct case whereupon it may be returned without a court order.

As we understand the import of AD7–94–25 it requires petitioner to accept **any** garnishment payments sent to his office, with the one exception noted in paragraph three (3) concerning insufficient information to post to the correct case, notwithstanding a recent amendment to the garnishment statutes which reflect a legislative intent to lessen the responsibility of Court Clerks in the area of receipt and disbursal of garnishment funds.

In the last legislative session 12 O.S.1991, § 1172.2(C) was amended, effective September 1, 1994, by the addition of a sentence which expressed an intent to have garnishees pay garnishment funds directly to the judgment creditor. The new sentence provides: "In any case in which the garnishee is required by law or by order of the court to pay garnishment funds, the garnishee shall pay the funds directly to the judgment creditor, unless otherwise ordered by the court upon good cause shown, to pay the funds directly to the court clerk."

In our view, AD7–94–25 expressly conflicts with this amendatory language because it requires the Court Clerk to accept or receive all garnishment funds submitted to him, with the one minor exception noted above, even though no order may exist in an individual case to do so. Contrary to the intent of the amendment, it appears AD7–94–25 has the effect of acting as a blanket order, applicable in all garnishment cases, that garnishment funds are properly paid to the Court Clerk without a specific finding or determination on a case-by-case basis of good cause for payment directly to the Court Clerk, rather than directly to the judgment creditor, as required by the new language of § 1172.2(C).

In that our responsibility is to ascertain and follow the intention of the Legislature [*Ledbetter, supra,* 764 P.2d at 179] and we believe AD7–94–25 conflicts with the legislative intent expressed in the recent amendment to § 1172.2(C) to lessen the role Court Clerks play in the receipt and disbursal of garnishment funds, we must also prohibit enforcement of this administrative order. To

do otherwise would improperly thwart the legislative will.[5]

## CONCLUSION

The Presiding Judge of a judicial administrative district has authority pursuant to 20 O.S. 1991, § 23(2), to promulgate rules for the speedy and efficient administration of justice within the district. Such rules, however, must fall when they are inconsistent with or contravene the intent of legislative enactments. As set out above, AD7–94–18, concerning orders releasing prisoners, and AD7–94–25, concerning the Court Clerk's handling of garnishment funds, both conflict with legislative enactments and, therefore, cannot stand. Accordingly, we assume original jurisdiction of this controversy and issue a writ of prohibition prohibiting enforcement of AD7–94–18 and AD7–94–25.

KAUGER, V.C.J., and HODGES, OPALA and SUMMERS, JJ., concur.

ALMA WILSON, C.J., concur as to I; dissent as to II.

SIMMS, J., concur in part—dissent in part as to I; concur as to II.

HARGRAVE and WATT, JJ., dissent as to I; concur as to II.

---

[5] By our prohibition of AD7–94–25 we do not imply that without a court order of good cause under amended § 1172.2(C), there are no occasions contained in the garnishment statutory scheme that require a Court Clerk to receive and disburse funds paid to a Court Clerk's office in relation to a garnishment proceeding. An example of such a situation would be where a garnishee pays funds to the clerk prior to any court order to pay as set out in 12 O.S.Supp.1994, § 1172.2(A), which provides in pertinent part: "If the garnishee pays funds into the court prior to issuance of an order to pay, the judgment creditor, or court clerk should hold the funds until such time as the order to pay would regularly issue." When payment is made to the Court Clerk in such a situation we find no provision that would authorize the clerk to refuse acceptance of the money by returning it to the garnishee.